Van Brunt, P. J.
This action was brought to recover the sum of $2,000, being an alleged balance due upon a purchase of corn by the plaintiffs for and on account of the defendants.
The answer denied all the allegations of the complaint, except that of the partnership of the defendants.
The circumstances out of which the alleged cause of action was attempted to be established by the evidence seem to be as follows:
In Hay, 1884, the defendants were copartners, carrying on business in London under the firm name of Thurber, Gates &. Co., and the defendant Gates was the active partner of the firm in London.
One L. W. Sawyer was at this time a commission merchant and broker in grain, etc., in London, and one George Cowan was his clerk, of which fact Gates had knowledge.
The defendant had been acquainted with Cowan for some time prior to the transactions in question herein, After Cowan had' entered L. W. Sawyer’s employ he recom *237 mended speculative investments (as Mr. Gates terms them), in various articles of merchandise to the defendant Gates and finally Mr. Gates on May 24, 1884, as Cowan states, said to him: “You may buy for me 40,000 bushels of August maize in New York,” or as Mr. Gates states: “I told him I would buy for my account 40,000 bushels of maize for future delivery, I think August of that year.”
Mr. Cowan conveyed Mr. Gates’ verbal message to his principal and Mr. Sawyer cabled to New York to the plaintiffs to execute the order, which they did on the same day at the price named by Gates, and notified L. W. Sawyer in London by cable of the purchase.
This cable was received in London after business hours, and on the twenty-sixth (the twenty-fifth being Sunday), L. "W. Sawyer sent Gates written notice of the purchase as follows:
“ In accordance with your instructions I have bought for your account in New York, on Saturday, 40,000 bushels maize, August dehvery at sixty-five cents, contract will follow,” and this notice was addressed to Thurber, Gates & Co.
The plaintiffs having bought the corn in their own name as required by the rules of the exchange, signed contracts in writing for this purchase and subsequently paid for the corn the full purchase-price.
It is conceded that speculations of this kind were no part of the defendants’ business and that Gates had no power to bind his copartners by any such adventures, but it is claimed that Gates became hable individually.
It is insisted upon the part of the defendant Gates that no liability can be enforced against him even if the above facts are found to be true, because the corn was subsequently sold by the plaintiffs, no notice of the time and place of sale being given—no demand ever made for the purchase price—no offer ever made to deliver the property to the defendants — the property was sold before the time for dehvery. '
It is to be observed that no such defenses are set up in the answer, which consisted simply of a denial of the con tract. It seems to be clear that under this condition of the pleadings none of the defenses above-stated can be made available to the defendants.
They are in the nature of a confession and avoidance, and the avoidance must be specially pleaded in order to be available.
The only question which could be litigated under these pleadings is whether- the defendants on the 24th of May, 1884, became hable to the plaintiffs because of this purchase of gram made on that day for their account.
*238 The evidence as to the sale of the com was objected to upon the ground that there was no allegation in the pleadings in respect to it, which objection was overruled and exception taken.
The admission of this evidence seems to have been erroneous because it had no bearing upon the issue presented, by the pleadings.
The evidence of Mr. Gates was taken de bene esse and read before the jury. In his deposition as taken Mr. Gates, after stating as above mentioned the giving of the order to Mr. Cowan, went on to say: “But it was distinctly understood that the purchase was made on my own account and that no margins were to be asked for or paid, etc.”
Before this paragraph was read to the jury it was objected to upon the ground that the witness conld only state what took place but not his understanding.
The court thereupon struck out the words “distinctly understood,” and allowed the evidence as thus amended to ■ be read to the jury, to which an exception was. duly taken.
The learned justice who presided at the trial of this case seems to have fallen into an error in supposing that , the striking out of the words “ distinctly understood ” relieved the evidence of. its objectionable features. As thus amended the witness was made to apparently swear to a conclusion of fact which he had not done, and if he had it would not have been admissible, because the evidence was not given upon which this conclusion was founded.
The next paragraph of the deposition reads as follows: “I understood that this purchase was to be made of L. W. Sawyer as a merchant and not through him.” This was. duly objected to and the objection was overruled, and thus again upon a very material question Mr. Gates is permitted to give a conclusion. One of the questions expressly raised by the pleadings in this case was that neither the defendants nor Mr. Gates had ever entered into any contract with the plaintiffs for the purchase of grain.
Mr. Gates claimed that he was buying of L. W. Sawyer as principal, and therefore evidence of what he understood and supposed was no evidence upon which a jury could be called upon to pass and which might have very seriously affected the minds of the jury.
On the same day L. W. Sawyer notified Mi Gates of the purchase of grain he sent a proposed contract to Mr Gates to sign. Mr. Gates thereupon called upon Mr Sawyer at. his office and they had some conversation about this con tract. Mr. Gates went away from Mi Sawyer's office leaving the proposed contract there unsigned ,
Mr. Gates in his deposition was asked the following question:
*239 Q. When you left the contract or paper with Mr. Sawyer “did you not repudiate the contract ?”
This question was objected to upon the ground that the witness could only state what was said and done, and not the legal effect of it.
This objection was overruled and exception taken, and the witness answered “yes.”
This ruling seems to have been error. _ The evidence was calculated to mislead the jury. The witness Sawyer had testified as to what took place at this interview and Mr. Gates had also testified upon this subject, and no words or acts of repudiation were testified to except that as to some of the terms of the proposed contract Mr. Gates objected, but the evidence contains no intimation that at that time Mr, Gates, by word or act, repudiated the purchase made for his account, and yet, by the admission of the evidence objected to, the jury may have been led to suppose that Mr. Gates then notified Mr. Sawyer that he repudiated the purchase.
It is to be observed in this connection that the rights of the parties became fixed by the giving of the order to buy, and its execution on May 24, 1887, and if the plaintiff,_ by such execution of said order, had acquired rights against the defendant Gates, they could not be nullified by an attempt upon the part of L. W. Sawyer, in London, to get from Mr. Gates a written contract more advantageous to the plaintiffs than the one which the law implied from the nature of the transaction, in which attempt he did not succeed.
There are some exceptions to the charge which it is not necessary to notice, as the exceptions already commented upon seem to require a new trial as to the defendant Gates.
Under section 3229 of the Code it would seem that as all the defendants united in one answer none of them are entitled to costs unless all are.
The judgment in favor of the defendants, H. E. Thurber, F. B. Thurber and W. A. Barshall, should be modified by striking therefrom the costs, and the judgment in favor of the defendant Gates should be reversed and a new trial order, with costs to the appellants to abide event.
Daniels, J., concurs; Brady, J„, concurs in the result.